**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23 B 6782 |
| IYS VENTURES, LLC, | ) | |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| _____ | ) | |
| | ) | |
| IYS VENTURES, LLC, | ) | |
| | ) | Adv. No. 23 A 194 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge David D. Cleary |
| ITRIA VENTURES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

IYS Ventures, LLC ("IYS," "Plaintiff" or "Debtor") filed an amended complaint

("Complaint") against Itria Ventures, LLC ("Itria"), Fox Capital Group, Inc. ("Fox"), Byzfunder

NY, LLC ("Byzfunder"), The Huntington National Bank ("Huntington") and Eby-Brown

Company, LLC ("Eby-Brown") (collectively, "Defendants"), seeking to determine the extent,

validity and priority of the Defendants' liens and interests in and against IYS's assets.

At the trial on May 8, 2024, the court heard argument and admitted exhibits into

evidence.  Stipulations or consent judgments were reached between Plaintiff and all Defendants

other than Eby-Brown.

Having reviewed the pleadings and papers filed with the court, the exhibits admitted into

evidence and the arguments of the parties, the court will enter judgment in favor of Plaintiff,

determining that Eby-Brown does not hold a perfected lien securing its debt, that its debt shall be

1

subordinate and inferior to Debtor's status as a hypothetical lien creditor and its interest is unsecured.

## I.      JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K). Venue is proper under 28 U.S.C. § 1409(a).

## II.      FINDINGS OF FACT

Eby-Brown is a limited liability company organized under the laws of the state of Delaware. (Joint Pretrial Statement ("JPS") ¶ 20.)  IYS is a member managed limited liability company organized under the laws of the State of Illinois.  Muwafak Rizek is the sole manager of IYS.  (JPS ¶ 2.)

Eby-Brown and IYS entered into a Credit & Security Agreement (the "Agreement") on July 31, 2020, providing for the sale of convenience store products to IYS.  (JPS ¶ 21.)  IYS operated gas stations across the United States.  (JPS ¶ 3.)

In the Agreement, IYS granted to Eby-Brown a security interest in all inventory, fixtures and personal property of every kind and nature, including all accounts, goods, documents, instruments, promissory notes, chattel paper, letters of credit and letter-of-credit rights, securities and all other investment property, general intangibles, money, deposit accounts, and any other contracts rights or rights to the payment of money; and all Proceeds (as defined in the Uniform Commercial Code) and products of each of the foregoing, in order to secure payment of IYS's obligations under the Agreement.  (JPS ¶ 22.)

The Agreement purports to grant to Eby-Brown a security interest in the property of Plaintiff to secure any amounts due to Eby-Brown. (JPS ¶ 23.)

Eby-Brown sued IYS and other defendants in DuPage County Circuit Court (the "State Court").  On July 26, 2022, the State Court entered an order against Debtor and the other defendants (the "Asset Freeze Order").  (Eby-Brown Ex. 5.)

On January 11, 2023, the State Court granted Eby-Brown's motion for default against all defendants.  (Eby-Brown Ex. 8.)  About four months later, the State Court denied a motion to vacate the default.  (Eby-Brown Ex. 11.)

On May 23, 2023, IYS filed for relief under chapter 11 of the Bankruptcy Code.  The next day, following a prove up hearing, the State Court entered a judgment against two other defendants.  (Eby-Brown Ex. 12.)

Eby-Brown filed a proof of claim in this bankruptcy case in the amount of $7,117,731.00, alleging that its claim is secured. (JPS ¶ 24; Eby-Brown Ex. 13.)

At the trial in this court on May 8, 2024, the court entered the following, which resolved Plaintiff's claims for relief against all Defendants except Eby-Brown:

- Consent Judgment in favor of Plaintiff and against Byzfunder

- Consent Judgment in favor of Plaintiff and against Fox

- Stipulated Judgment finding that Itria holds a first-priority perfected general security interest in all property of the estate to secure a claim in the amount of $899,286.90 (less any adequate protection payments received during the chapter 11 case)

- Judgment finding that Huntington holds a first perfected general security interest in property of the estate described in the Joint Pretrial Stipulation as pumps and related equipment.

### III.   CONCLUSIONS OF LAW

**A. This is an action to determine the validity, priority, or extent of Eby-Brown's lien and interest in Debtor's property**

**1.   The issue of perfection is before the court**

Eby-Brown claims that it holds a valid, second-priority security interest in the assets of the Debtor, and therefore a secured claim against the bankruptcy estate.  Plaintiff asserts that Eby-Brown's security interest is unperfected, and therefore its claim in in this bankruptcy case is not secured.

In its trial brief, Eby-Brown argued that "in the face of the widespread fraud and inequitable conduct Debtor committed against Eby-Brown, Eby-Brown respectfully requests the Court to treat the complaint filed in the DuPage County action and resulting asset freeze order as having perfected Eby-Brown's security interest in certain Debtor assets as granted to Eby-Brown under the Credit and Security Agreement."  Eby-Brown Trial Brief, pp. 3-4.

At trial, Eby-Brown disputed that the issue of perfection was even before the court, arguing that the Complaint sought only a determination of the validity, nature, extent and priority of the various Defendants' rights.

In paragraph (B) of the Complaint's prayer for relief, however, Plaintiff asked the court to enter an order "[d]etermining and declaring the extent to which the claims of Itria, Fox, Byzfunder, Huntington and Eby hold secured claims and to the extent that those claims are unsecured claims[.]"  This relief is appropriately sought by adversary proceeding, because the Debtor "is in doubt as to the priority of liens in estate property."  10 Collier on Bankruptcy ¶ 7001.03 (16th 2024) (footnote omitted).  *See also* Fed. R. Bankr. P. 3007(b).  To determine whether Eby-Brown holds a secured claim, and its priority among the competing Defendants, the court must necessarily consider the issue of perfection.

4

To explain why this is so, the court must take a step back and lay the framework. "Article 9 of the Illinois Uniform Commercial Code (UCC) governs secured transactions and provides a comprehensive scheme for regulation of security interests in personal property and fixtures and with few exceptions applies to any transaction (regardless of its form) which is intended to create a security interest in personal property[.]" *Zurich Am. Ins. Co. v. MB Fin. Bank, N.A.*, 2020 IL App 190767-U, ¶ 40 (quotations omitted) (unpublished order).

Under Article 9, a "security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral." 810 ILCS 5/9-203(a). Article 9 further provides that "a security interest is enforceable against the debtor and third parties with respect to the collateral only if: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) … (A) the debtor has authenticated a security agreement that provides a description of the collateral[.]" 810 ILCS 5/9-203(b). *See also Heartland Bank & Tr. v. The Leiter Grp.*, 2014 IL App 130498, ¶ 18, 18 N.E.3d 558, 564 (2014).

The parties do not dispute that in the Agreement, IYS granted to Eby-Brown a security interest in various assets. "To be fully effective against third parties, [however,] a security interest must be perfected[.]" *CNH Cap. Am. LLC v. Trainor Grain and Supply Co.* (*In re Printz*), 478 B.R. 876, 881 (Bankr. C.D. Ill. 2012). Therefore, for the Agreement to support a secured proof of claim in this bankruptcy case, Eby-Brown must have perfected its security interest prior to the date on which IYS filed for relief under the Bankruptcy Code.

The reason that Eby-Brown cannot assert a secured claim if its security interest is unperfected is this: Pursuant to the Uniform Commercial Code, an unperfected security interest in personalty is subordinate to the interest of a person who becomes a lien creditor before the

security interest is perfected.  *See* 810 ILCS 5/9-317(a)(2).  In this chapter 11 case, that person is the debtor-in-possession, IYS.

"Upon commencement of a bankruptcy case, a trustee acquires the status of a hypothetical judicial lien creditor and may avoid any lien or encumbrance on the debtor's property that such creditor could avoid under state law." *Reinbold v. Wells Fargo Bank, N.A.* (*In re Alvarado*), 517 B.R. 880, 883 (Bankr. C.D. Ill. 2014).  With limited exceptions, a chapter 11 debtor-in-possession, such as IYS, has the rights and powers of a trustee.  11 U.S.C. § 1107(a).

Therefore, a bankruptcy trustee – or a chapter 11 debtor-in-possession – can defeat an unperfected lien interest in personalty due to its status as a hypothetical lien creditor.  If Eby-Brown's security interest was not perfected prior to the date IYS filed for relief under the Bankruptcy Code, it does not hold a secured claim in this bankruptcy case.

That is why answering the question of perfection is essential to resolving Debtor's request that the court determine and declare the extent to which Eby-Brown holds a secured claim.  *See In re Cook*, 384 B.R. 282, 297 (Bankr. N.D. Ala. 2008) ("[C]ore proceedings … include the determinations of the validity, extent and priority of Welch's lien and the *inseparable* issue of perfection.") (Emphasis added.)

**2.  It was not necessary for Debtor to seek relief under 11 U.S.C. § 544**

Eby-Brown suggested in closing arguments that Debtor has not sought relief under § 544, and therefore cannot defeat its secured claim.  This argument cannot succeed.

Pursuant to 11 U.S.C. § 544,

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, ***the rights and powers of, or*** may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect

6

to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544 (emphasis added).  This section provides the trustee – or as here, a chapter 11 debtor-in-possession – with the status of a hypothetical judicial lien creditor.

Section 544 of the Code vests a trustee with the rights of a hypothetical lien creditor whose lien was perfected at the time of the bankruptcy petition. If the holder of a security interest in the debtor's property has not taken the necessary steps under applicable law to put other potential creditors on notice of his interest (perfection) then the trustee in bankruptcy, upon commencement of the case, can subordinate or "avoid" that interest, thus relegating it to a status of a general creditor of the bankruptcy estate.

*Matter of Wheaton Oaks Off. Partners Ltd. P'ship*, 27 F.3d 1234, 1244 (7th Cir. 1994).

Under Illinois law, which adopted the Uniform Commercial Code, the definition of "lien creditor" includes "a trustee in bankruptcy from the date of the filing of the petition[.]" 810 ILCS 5/9-102(a)(52).  "Thus, as to the trustee in bankruptcy, the UCC makes the lien rights of the holder of an unperfected security interest subordinate to the rights of a trustee in bankruptcy, without any requirement to avoid the lien under the Bankruptcy Code." *GAF Linden Employees Federal Credit Union v. Robertson* (*In re Robertson*), 232 B.R. 846, 850 (Bankr. D. Md. 1999)

7

(discussing Maryland law, which has equivalent statutory language to Illinois, under a prior numbering scheme).  *See also McClellan v. Cantrell*, 217 F.3d 890, 897 (7th Cir. 2000) (Ripple, J., concurring) (when "a security interest … has not been perfected … the unperfected security interest is subordinate to the rights of perfected security interests [and] lien creditors, including trustees in bankruptcy").

Since a chapter 11 debtor-in-possession has "all the rights … and powers … of a trustee" in a chapter 11 case, if Debtor demonstrates that Eby-Brown's lien is unperfected, there is no need to *avoid* that lien under § 544.  It is simply *subordinated*, and Eby-Brown is left with an unsecured claim in the bankruptcy case.

**B.   Eby-Brown did not perfect its lien prior to the petition date**

**1.   Eby-Brown did not perfect its lien under state law**

"A security interest in most collateral is perfected by the filing of a financing statement with the Illinois Secretary of State. (See 810 ILCS 5/9–302, 5/9–401(c) (West 1993).)  Once the interest in the original collateral is perfected, the security interest in the proceeds from the collateral is also perfected." *Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 272 Ill. App. 3d 370, 377, 649 N.E.2d 511, 516 (1995) (footnote omitted).  There is no evidence that Eby-Brown filed a financing statement.  Eby-Brown did not allege the existence of a financing statement and has not produced any such document.

Therefore, Eby-Brown did not perfect its security interest in Debtor's assets under state law.

**2. The State Court complaint and Asset Freeze Order cannot take the place of a financing statement**

Eby-Brown argues that although it did not file a financing statement, the

> Asset Freeze Order provides the same notice as a UCC financing statement in the current situation…. By treating the Asset Freeze Order as if not perfection in law due to the state court's findings and order, but at least as an 'equitable perfection' of the Eby-Brown security interest, this Court will finally allow Eby-Brown to recoup a fraction of what it lost due to the Debtor's fraudulent acts.

Eby-Brown Trial Brief, p. 4. Similarly, in the Joint Pretrial Statement, Eby-Brown listed one disputed issue of law:

> Eby's security interest was perfected at the time that it filed a Complaint for the appointment of a Receiver and for injunctive relief and further, upon the Court's entry of an Asset Freeze Order against the Debtor and its principal members, Messrs. Rizek and Samara, dated July 26, 2022 (*Eby-Brown Company LLC v. IYS Ventures, LLC, et al.* – 2022 LA 000217 -- DuPage County).

JPS, ¶ 95.

Eby-Brown cites no case law in support of its request that a complaint or a court order can take the place of a financing statement filed with the Illinois Secretary of State. It does cite several decisions describing the bankruptcy court as a court of equity that may use 11 U.S.C. § 105 "to craft relief based on the balance of equities at issue in light of the broader policy goals of the Bankruptcy Code[.]" Eby-Brown Trial Brief, p. 5.

The Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Section 105(a), however, is not a general mandate to do equity. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code").

9

"Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Law v. Siegel*, 571 U.S. 415, 421 (2014). Although the Bankruptcy Code does not *prohibit* this request for "equitable perfection," bankruptcy courts cannot make law based on what they deem to be equitable. *See Sunbeam Prod., Inc. v. Chicago Am. Mfg., LLC*, 686 F.3d 372, 376 (7th Cir. 2012) ("Rights depend ... on what the Code provides rather than on notions of equity.").

The Bankruptcy Code does not authorize this court to determine that a state court order may take the place of the financing statement required by state law, and the court will not use § 105 to accomplish that result.

### C. Eby-Brown does not have an equitable lien

#### 1. The court will not use the state court complaint and Asset Freeze Order to create an equitable lien

To the extent that Eby-Brown argues not that its state court complaint and the Asset Freeze Order constituted perfection under state law but rather form the basis for creation of an equitable lien, the court rejects this argument as well.[1]

> [T]he imposition of an equitable lien … is a remedy for a debt that cannot be legally enforced but, based upon considerations of right and fairness, should be recognized. A court may find that an equitable lien exists either where the parties expressed in writing their intention to make real property, personal property, or some fund the security for a debt but did not use express lien language or where considerations of fairness and justice would require imposing a lien even without an express agreement between the parties.

*Bank of Am., N.A. v. Schroeder*, 2021 IL App 200339, ¶ 32, 189 N.E.3d 1073, 1083–84 (citations omitted). *See also Lewsader v. Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 178, 694 N.E.2d 191, 197 (1998).

---

[1] In its proof of claim, Eby-Brown asserted that its claim was secured by a lien and that the basis for perfection of that lien was the Agreement. Eby-Brown did not assert an equitable lien in the proof of claim or in its answer to the Amended Complaint.

"The essential elements of an equitable lien are (1) a debt, duty, or obligation defendant owed to plaintiff and (2) the existence of a *res* that, in some way, is particularly related to the debt or obligation." *Paliatka v. Bush*, 2018 IL App 172435, ¶ 28, 109 N.E.3d 343, 351 (2018). Findings of fact must be made regarding each of these elements before a trial court may exercise its discretion to grant the remedy of the creation of an equitable lien.

Recall, however, that an equitable lien is a court-created remedy for a debt. An equitable lien will not be created by a court where the means of perfecting a statutory lien were available but not employed by the creditor.

> An equitable lien is not appropriate in bankruptcy where the party has not expended all efforts to perfect the interest upon which it seeks such a lien. Sciacqua did not file a continuation statement and allowed her lien to lapse. There is no allegation that anybody or anything prevented her from filing such a statement. An equitable lien therefore cannot lie.

*Matter of Reda, Inc.*, 54 B.R. 871, 879 n.16 (Bankr. N.D. Ill. 1985) (citations omitted).

Although Eby-Brown argued that Debtor defrauded it, there is no evidence that anybody or anything prevented Eby-Brown from filing a financing statement and perfecting its security interest under state law. *See also In re Sullivan*, 82 B.R. 133, 135 (Bankr. D. Colo. 1988) ("One of the issues in determining the existence of an equitable lien is whether the creditor has done all it reasonably can do to perfect its lien."); *Hassett v. Revlon, Inc.* (*In re O.P.M. Leasing Servs., Inc.*), 23 B.R. 104, 119 (Bankr. S.D.N.Y. 1982) ("an equitable lien will not be upheld as against a trustee where all available means of perfecting a legal lien were not employed by the would-be secured creditor").

Moreover, the Seventh Circuit has told its lower courts that equitable liens are disfavored in bankruptcy court. *See Small v. Beverly Bank*, 936 F.2d 945, 949 (7th Cir. 1991) ("In any event, and, as noted by the district court, equitable liens of the kind claimed by Small have long been the object of scorn in bankruptcy."). *See also In re Bell*, 194 B.R. 192, 196 (Bankr. S.D. Ill.

11

1996) ("equitable liens arising under state law are contrary to the letter and purpose of the Bankruptcy Code"); *In re Hendleman*, 91 B.R. 475, 477 (Bankr. N.D. Ill. 1988) ("In a bankruptcy case, there is nothing equitable about taking money away from unsecured creditors and giving it to a creditor that failed to protect its own interests when it had a chance to do so.").

**2. Even if the court created an equitable lien, it would be subordinated to the Debtor's status as a hypothetical lien creditor.**

Even if the court imposed an equitable lien, it would be treated as unperfected. Therefore, pursuant to 11 U.S.C. § 544, it would be subordinated to the debtor-in-possession's status as a hypothetical lien creditor. "The legislative history of the Bankruptcy Code makes clear that Article 9 of the Uniform Commercial Code treats equitable liens as unperfected security interests which the trustee can in any case set aside." *Fangio v. DivLend Equipment Leasing, LLC* (*In re Ajax Integrated, LLC*), No. 14-50012, 2016 WL 1178350, at *6 (Bankr. N.D.N.Y. Mar. 23, 2016) (quotation omitted). It would be a futile effort to go through the steps required to find that an equitable lien should be created, knowing all along that it would not change the parties' positions. *See In re Bonner*, No. ADV 12-4177, 2014 WL 890477, at *6 (B.A.P. 9th Cir. Mar. 6, 2014) ("Even if Wallace was entitled to an equitable lien *and* was granted one by the bankruptcy court, it would still be subordinate to Bonner's interest as a hypothetical judgment lien creditor and avoidable.… Therefore, a trial on this issue would serve no purpose."). *Cf. Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (holding that bankruptcy courts may immediately deny motions to convert in lieu of an "order that merely postpones the allowance of equivalent relief").

**D. The *Rooker-Feldman* doctrine does not compel a different conclusion**

At trial, Eby-Brown argued that its lien is valid because the Agreement is valid. In support of this argument, it asserted for the first time that when the State Court refused to vacate

12

the default judgment, this was an adjudication of the Agreement.  It argued that pursuant to the *Rooker-Feldman* doctrine, this court cannot come to a different conclusion.

The *Rooker-Feldman* doctrine "operates to stop parties seeking to have a state-court judgment declared void on the basis of alleged errors or mistakes."  *Schmid v. Bank of America, N.A.* (*In re Schmid)*, 494 B.R. 737, 746 (Bankr. W.D. Wis. 2013). "It is a jurisdictional doctrine premised upon the fact that, because federal district courts are courts of original jurisdiction, lower federal courts are not authorized to review appeals from state court judgments[.]" *Crestview Village Apartments v. U.S. Dept. of Housing and Urban Development*, 383 F.3d 552, 556 (7th Cir. 2004).

Whether or not the State Court decision was an "adjudication" of the Agreement, the *Rooker-Feldman* doctrine does not bar Plaintiff's claim for relief against Eby-Brown.  Its application "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *R & J Constr. Supply Co., Inc. v. Juma* (*In re Juma*), 530 B.R. 682, 692 (Bankr. N.D. Ill.), *aff'd,* 542 B.R. 237 (N.D. Ill. 2015).

In a situation similar to the one before the court today, the Seventh Circuit considered whether prior state court litigation precluded a debtor from objecting to a claim in bankruptcy court.  The panel found that it did not.

> First, [Debtor] did not file a federal suit seeking, as a cause of action or prayer for relief, to set aside a state court judgment…. Second, the state court never decided (nor could it) the key issue facing the bankruptcy court in [this] dispute: whether [Defendant's] bankruptcy claim should be allowed or disallowed under federal bankruptcy law. The *Rooker–Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? ... [I]f the latter, then there is jurisdiction.  The state court

13

judgment and the bankruptcy court's disallowance of [Defendant's] claim simply are not two sides of the same coin.

*Fliss v. Generation Cap. I, LLC*, 87 F.4th 348, 353-54 (7th Cir. 2023) (quotations and footnote omitted).

Similarly, in this case, Debtor is not seeking to set aside the State Court default judgment. Indeed, Debtor does not dispute the validity of the Agreement; it admits that Eby-Brown holds a security interest in its personalty. *See* Debtor Trial Brief, p. 4. Instead, the relief Debtor requests in the Complaint is a determination of the validity, priority and extent of Eby-Brown's lien. The State Court default judgment made no finding about whether Eby-Brown's security interest in Debtor's personalty was perfected, or whether its secured claim should be allowed in bankruptcy court. That is a decision for this court, and the *Rooker-Feldman* doctrine does not bar its consideration.

## IV.   CONCLUSION

For all of the reasons stated above, the court will enter a judgment in favor of Plaintiff. In light of the analysis above and the resulting decision to enter judgment in favor of Plaintiff, the court will enter a separate order denying Eby-Brown's oral motion for directed verdict.

Date:   July 25, 2024

_____
DAVID D. CLEARY
United States Bankruptcy Judge

14